Bruce WEINER, M.D., Petitioner,

v.

Emmanuel WASSON, Respondent.

No. 94–0541.

Supreme Court of Texas.

Argued Jan. 5, 1995.

Decided June 8, 1995.

Rehearing Overruled July 21, 1995.

Sam A. Houston, Houston, for petitioner.

David W. Holman, Richard P. Hogan, Jr., Kevin H. DuBose, Richard W. Ewing, W. James Kronzer, Jr., Houston, for respondent.

CORNYN, Justice, delivered the opinion of the Court, joined by GONZALEZ, HIGHTOWER, GAMMAGE, ENOCH and SPECTOR, Justices.

OWEN, Justice, joined by PHILLIPS, Chief Justice, and HECHT, Justice, dissenting.

We granted the application for writ of error in this case to decide whether the statute of limitations contained in section 10.01 of the Medical Liability and Insurance Improvement Act (Medical Liability Act) [1] can be constitutionally applied to the malpractice claim of a minor under the open courts provision of the Texas Constitution. The court of appeals, relying on our decision in *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983), held that section 10.01 of the Medical Liability Act is unconstitutional as applied to minors, who are under legal disability from bringing suit on their own behalf. 871 S.W.2d 542, 543. We affirm the judgment of the court of appeals, and remand this cause to the trial court for further proceedings consistent with this opinion.

In May 1988, Dr. Bruce Weiner performed surgery on Emmanuel Wasson, who was then fifteen years old. The surgery required insertion of surgical pins into Wasson's right femur. On his last visit in June 1988, Wasson complained to Weiner of constant pain in his hip and of his need for crutches. In August 1988, Wasson saw another physician, who took x-rays of his hip. The x-rays showed that one of the surgical pins was protruding into Wasson's right hip joint. Wasson later underwent two additional surgeries, but they did not relieve his constant pain. Wasson turned eighteen on December 16, 1990, and a few months later underwent surgery for the total replacement of his right hip.

1. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1994).

2. When a trial court grants summary judgment without specifying the grounds, the summary judgment must be affirmed on appeal if any of

On August 25, 1992, Wasson filed suit against Weiner, alleging that Weiner's negligence caused the painful destruction of his right hip joint and necessitated the hip replacement surgery. Weiner moved for summary judgment on two grounds. Weiner first urged that section 10.01 of the Medical Liability Act, which establishes a two-year statute of limitations for health care liability claims, barred Wasson's claim. Weiner also argued that even if the limitations period was tolled during Wasson's minority, Wasson's claim was nevertheless barred because Wasson failed to file suit within a "reasonable time" after attaining majority. The trial court granted Weiner's motion for summary judgment without specifying the grounds. The court of appeals reversed the trial court's judgment and remanded the case for further proceedings, holding that our opinion in *Sax* compels the conclusion that section 10.01 of the Medical Liability Act is unconstitutional as applied to minors. [2]

I

We begin our inquiry by reviewing the history of the medical malpractice statute of limitations in Texas. In 1975, as part of the Professional Liability Insurance for Physicians, Podiatrists, and Hospitals Act, the Legislature enacted article 5.82, section 4, of the Texas Insurance Code, which purported to restrict the period available for minors to bring medical malpractice actions. *See Sax*, 648 S.W.2d at 663. Section 4 of article 5.82 provided:

Notwithstanding any other law, no claim against a [health care provider] ... may be commenced unless the action is filed within two years of the breach or the tort complained of or from the date the medical treatment that is the subject of the claim or the hospitalization for which the claim is made is completed, except that *minors under the age of six years shall have until their eighth birthday* in which to file, or

the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). The court of appeals, however, did not address Weiner's second ground for summary judgment. We address both grounds below.

have filed on their behalf, such claim. Except as herein provided, this section applies to all persons regardless of minority or other legal disability.

TEX.INS.CODE art. 5.82, § 4 (emphasis added) (hereinafter, article 5.82). When article 5.82 was repealed on August 29, 1977, the Legislature replaced it with section 10.01 of the Medical Liability Act, which provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, *minors under the age of 12 years shall have until their 14th birthday* in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (emphasis added) (hereinafter, section 10.01). As we have observed before, other than specifying different ages by which minors must bring claims, section 10.01 and article 5.82 are substantially the same. *See Sax,* 648 S.W.2d at 663 n. 1; *Nelson v. Krusen,* 678 S.W.2d 918, 920 n. 1 (Tex.1984).

In 1983, this Court unanimously held that article 5.82 was unconstitutional as applied to minors under the open courts provision of article I, section 13 of the Texas Constitution.[3] *Sax,* 648 S.W.2d at 665–667. We held that the open courts provision guarantees that "the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress." *Sax,* 648 S.W.2d at 665–666.

Thus, we first considered whether article 5.82 "effectively abrogated" a child's right to bring a medical malpractice cause of action. Under article 5.82, the limitations period was tolled until a child reached age six, and upon reaching age six, a child, like an adult, was required to bring suit within two years. We observed, however, that a child lacks legal capacity to bring suit during minority unless the minor's legal disability has been removed. Although parents, guardians, or next friends may as adults be legally capable of bringing suit on a child's behalf during minority, we held that the possibility that an adult *might* act on the child's behalf did not vindicate the total abrogation of the child's cause of action. *Sax,* 648 S.W.2d at 667.

We then considered whether the legislative purpose of article 5.82 outweighed the deprivation of a child's rights under the open courts provision. Although the Legislature enacted article 5.82 for the legitimate purpose of restraining the escalating cost of liability insurance for health care providers, we concluded that the means used to achieve this purpose were not "reasonable when they [were] weighed against the effective abrogation of a child's right to redress." *Sax,* 648 S.W.2d at 667. We accordingly held that, as applied to minors, article 5.82 violated article I, section 13 of the Texas Constitution.

## II

■ Applying the principles articulated in *Sax* to this case, the court of appeals held that section 10.01, like its predecessor article 5.82, is unconstitutional as applied to minors because it purports to cut off Wasson's cause of action before he reaches majority, an age at which he may lawfully sue on his own behalf. 871 S.W.2d at 543. We agree. As previously noted, the only significant difference between article 5.82 and section 10.01 is that section 10.01 extends the tolling period from age six to age twelve. This one change in section 10.01 does not cure the constitutional infirmity that we identified in article 5.82 in *Sax.* Whether a statute compels a child to bring suit by age eight or by age fourteen is inconsequential because in either instance a minor child is legally disabled from pursuing a suit on his own. We do not doubt the Legislature's power to remove a

---

3. The open courts provision states:
   All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.
   TEX. CONST. art I, § 13.

minor's legal disabilities and thus lower below eighteen the age at which a person may sue on his or her own behalf, but the Court unanimously agrees that the Legislature did not do so in section 10.01. 900 S.W.2d 326. Consistent with *Sax*, therefore, we hold that section 10.01 is unconstitutional when applied to a minor because it violates article I, section 13 of the Texas Constitution.

Weiner contends that *Sax* does not control this case, pointing to the following excerpt from the Court's opinion in an attempt to distinguish it:

> If the parents, guardians, or next friends of the child negligently fail to take action in the child's behalf within the time provided by article 5.82, the child is precluded from asserting his cause of action under that statute. Furthermore, the child is precluded from suing his parents on account of their negligence, due to the doctrine of parent-child immunity. *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971).

*Sax*, 648 S.W.2d at 667. Weiner maintains that *Felderhoff v. Felderhoff* is no longer the law in Texas, and that this Court's subsequent decision in *Jilani v. Jilani*, 767 S.W.2d 671 (Tex.1988), expanded the exceptions to the parent-child immunity doctrine upon which *Felderhoff* was based. Under *Jilani*, Weiner argues that a child now has the right to sue a parent who negligently fails to bring suit on the child's behalf within the prescribed limitations period. Therefore, the argument goes, a minor child whose parent fails to assert a medical malpractice claim within the limitations period provided by section 10.01 may sue the parent for negligence. This, it is contended, provides the adequate substitute remedy we found lacking in *Sax*. We disagree.

*Jilani* did not change the law governing parent-child immunity articulated in *Felderhoff*. To the contrary, the *Jilani* court applied the *Felderhoff* test.[4] The Court's opinion expressly states, "[w]e continue to adhere to the principles and policy expounded in *Felderhoff*." *Jilani*, 767 S.W.2d at 672. Furthermore, *Jilani* was expressly limited to automobile negligence cases. *Id.* at 673. Because *Felderhoff* remains Texas law, we reject Weiner's argument that *Sax* does not control this case.

Additionally, arguing that Wasson had a parent who was capable of bringing suit within the two-year limitations period. Weiner urges us to either overrule *Sax*, or limit the holding to its facts. We decline to do so.

In *Sax*, a unanimous Court explicitly considered and rejected the argument that the ability of child's parent to bring suit on behalf of the child was a reasonable substitute—the same argument made by Weiner in this case. *See Sax*, 648 S.W.2d at 667. Furthermore, standing for the premise that the Legislature has no power to make a remedy contingent upon an impossible condition, *Sax* has been frequently cited as authority by this Court, the courts of appeals, and even by the high courts of other states. *E.g., Whitlow v. Board of Educ.*, 190 W.Va. 223, 438 S.E.2d 15, 22 (1993); *Mominee v. Scherbarth*, 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717, 721 (1986); *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 10–11 (Mo.1986); *Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 692 P.2d 280, 286 (1984). Indeed, *Sax* has been the cornerstone of many of our subsequent decisions. *E.g., Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985) (holding that section 10.01 could not cut off a cause of action before the plaintiff knew of the wrong's existence); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984) (holding that article 5.82 could not cut off a cause of action before the plaintiff knew of the wrong's existence); *see also Tinkle v. Henderson*, 730 S.W.2d 163, 167 (Tex.App.—Tyler 1987, writ ref'd) (holding that article 5.82 could not cut off the claim of a mental incompetent).

In short, Weiner presents no arguments that were not considered in *Sax*, nor does he demonstrate that *Sax* was wrongly decided. Of course, we have, on occasion and

---

4. Under both *Jilani* and *Felderhoff*, the parent-child immunity doctrine prevents suits by a child against a parent with respect to "alleged acts of ordinary negligence which involve a reasonable exercise of parental authority or the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Jilani*, 767 S.W.2d at 672; *Felderhoff*, 473 S.W.2d at 933.

for compelling reasons, overruled our earlier decisions, but undeniably, *Sax* has become firmly ensconced in Texas jurisprudence. Generally, we adhere to our precedents for reasons of efficiency, fairness, and legitimacy. First, if we did not follow our own decisions, no issue could ever be considered resolved. The potential volume of speculative relitigation under such circumstances alone ought to persuade us that stare decisis is a sound policy. Secondly, we should give due consideration to the settled expectations of litigants like Emmanuel Wasson, who have justifiably relied on the principles articulated in *Sax*. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 321, 112 S.Ct. 1904, 1916, 119 L.Ed.2d 91 (1992) (J. Scalia, concurring) ("[R]eliance on a square, unabandoned holding of the Supreme Court is *always* justifiable reliance...."). Finally, under our form of government, the legitimacy of the judiciary rests in large part upon a stable and predictable decisionmaking process that differs dramatically from that properly employed by the political branches of government. *See Vasquez v. Hillery,* 474 U.S. 254, 265–66, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986) ("[Stare decisis] permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact."). Accordingly, we decline to overrule *Sax* or somehow limit the holding of that case to its facts.

Although the dissenting justices agree with Weiner that *Sax* can be limited to its facts, we are unpersuaded. Based on the same principles we relied upon in *Sax,* just two years ago this Court held that even the commencement of a lawsuit by a mental incompetent and his wife did not affect the tolling of limitations during the period of the mental incompetent's legal disability. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 756 (Tex.1993). In arriving at this holding, we relied upon a series of cases from this and other jurisdictions that treat tolling of limitations for minors and mental incompetents identically. We reasoned:

Access to the courts does not alone provide a legally incapacitated person a viable opportunity to protect his legal rights. The disability of a person of unsound mind is not only the lack of access to the courts, but also the inability to participate in, control, or even understand the progression and disposition of their lawsuit.... [T]he purpose and scope of the tolling provision as applied to *minors* and persons of unsound mind, extends beyond merely ensuring their access to the courts.

*Id.* at 755 (citations omitted) (emphasis added). Thus, consistent application of our legal principles dictates that the failure of a parent to bring suit on behalf of a minor, a person under legal disability, does not affect the tolling of limitations. *See Ruiz* at 756 ("[I]f ... [the guardian ad litem,] having instituted an action within the statutory period, discontinues it, the rights of the infant are not prejudiced thereby, and he may still take advantage of his disability, the action not being barred until the lapse of the statutory period after he comes of age.") (quoting M.C. Dransfield, Annotation, *Appointment of Guardian for Incompetent or for Infant as Affecting Running of Statute of Limitations Against Ward,* 86 A.L.R.2d 965, 976 (1962)).

Weiner notes that this Court has previously decided the constitutionality of section 10.01 on an "as applied" or case-by-case basis, *see Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984) (holding that section 10.01 was unconstitutional as applied to plaintiff because plaintiff had not discovered the cause of action within the two-year limitations period), and argues that we should do so here. We are of a contrary view. Weiner's argument leads to the unworkable standard contended for by the dissent, which would inquire whether the minor's parent was "incompetent" or had a "conflict of interest" that prevented the parent from acting in the minor's best interests. We fail to see any benefit in requiring a minor to show that his or her parent was incompetent or failed to act in the minor's best interests by not pursuing a medical malpractice claim, especially when the very failure of the parent to do so leaves the minor without any legal recourse. We accordingly decline the invitation to limit *Sax* to its facts.

## III

Having determined that section 10.01 is unconstitutional as applied to minors, we must now determine the limitations period that applies to a minor's medical malpractice claims. Wasson argues that he is entitled to pursue his lawsuit within two years after attaining majority under sections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code. Weiner, on the other hand, argues that a minor has only a "reasonable time" after attaining majority in which to file suit, relying in part on this Court's decision in *Nelson v. Krusen*, 678 S.W.2d at 923. Because Wasson did not bring suit until eighteen months after he attained age eighteen, Weiner argues that Wasson failed, as a matter of law, to bring suit within a reasonable time.

The reasonable-time rule is a court-made standard, which has heretofore been applied only in a limited number of cases involving adult plaintiffs who, because of the nature of their claim, did not have a reasonable opportunity to discover their injuries and bring suit within a prescribed limitations period. *See Nelson v. Krusen*, 678 S.W.2d at 921–22. The reasonable-time rule, in effect, allows certain adult plaintiffs two years *plus* a reasonable time to bring suit. Despite the fact that we have never applied the reasonable-time rule to cases other than those involving claims that are by their nature exceedingly difficult or impossible to discover, Weiner urges us to hold that minors have only a reasonable time after attaining age eighteen to bring suit. We decline to do so.

Rather than fashioning a rule of our own making and applying it to minor plaintiffs, we think it is more appropriate to look to the general limitations provisions enacted by the Legislature. Sections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code together provide a general statute of limitations for minors' personal injury claims.[5] Section 16.003 establishes a two-year limitations period,[6] but section 16.001 tolls this period until the minor reaches age eighteen.[7] Taken together, these sections require a minor to file a claim before reaching age twenty for personal injuries sustained during the period of minority. Because section 10.01 of the Medical Liability Act is unconstitutional as it applies to minors, we conclude that the limitations period provided by the general tolling and limitations provisions of Texas Civil Practice and Remedies Code sections 16.001 and 16.003 apply to Wasson's claim.[8]

We therefore hold that Wasson had two years after attaining age eighteen to bring suit for the acts of medical malpractice allegedly committed during his minority. We affirm the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

OWEN, J., joined by PHILLIPS, C.J., and HECHT, J., dissents.

OWEN, Justice, joined by PHILLIPS, Chief Justice, and HECHT, Justice, dissenting.

I respectfully dissent. I would hold that as applied to the facts of this case, section 10.01 of the Medical Liability and Insurance Improvement Act does not violate the open

---

5. These provisions date back to at least 1911. *See Sax,* 648 S.W.2d at 663.

6. Section 16.003 provides:

(a) A person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues.
TEX.CIV.PRAC. & REM.CODE § 16.003.

7. Section 16.001 provides:

(a) For purposes of this subchapter, a person is under a legal disability if the person is:
(1) younger than 18 years of age, regardless of whether the person is married; or
(2) of unsound mind.

(b) If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period.
TEX.CIV.PRAC. & REM.CODE § 16.001.

8. We note that when faced with the unconstitutionality of medical malpractice statutes similar to § 10.01, several other states have also applied the general tolling statute. *See Whitlow v. Board of Educ.,* 190 W.Va. 223, 438 S.E.2d 15, 23 (1993); *Strahler v. St. Luke's Hosp.,* 706 S.W.2d 7, 11 (Mo.1986); *Mominee v. Scherbarth,* 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717, 723 (1986); *Barrio v. San Manuel Div. Hosp.,* 143 Ariz. 101, 692 P.2d 280, 286 (1984).

courts provision of the Texas Constitution. Requiring a medical malpractice suit to be brought on behalf of a minor within the time set forth in article 4590i, section 10.01, is not unconstitutional where the minor is at least twelve years of age, his or her parent knew of the injury and potential claim within the limitations period, and the parent or legal guardian was competent and had no conflict of interest that would preclude him or her from acting in the best interest of the child.

My principal concern is that the Court has taken such an expansive view of the scope of the open courts provision that *no* statute of limitations aimed at limiting the claims of minors can pass constitutional muster. The Court has tied the hands of the Legislature far beyond what was ever envisioned by the drafters of our Texas Constitution. It does so based on what I believe is an incorrect application of *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983).

The Legislature had the *Sax* decision before it in 1993 when it renewed and extended section 10.01 of article 4590i until the year 2009. *See* Medical Liability and Insurance Improvement Act, 73rd Leg., R.S., ch. 625, § 3, 1993 Tex.Gen.Laws 2347, 2347. When the Legislature enacted the changes to the statute held unconstitutional in *Sax,* it articulated strong policy considerations underpinning those changes. We should not presume, because of the *result* in *Sax,* that the newer statute is unconstitutional. Rather, we should apply the *principles* articulated in *Sax* and examine the newer statute and the rationale supporting its enactment, as applied to the facts of this case. Under the facts of this case, section 10.01 is constitutional. I would reverse the judgment of the court of appeals and remand the case to the trial court for any further development of facts in light of this holding.

## I

At the time Weiner performed surgery on Emmanuel Wasson in May of 1988, Wasson was fifteen years old. Weiner last treated Wasson in June of 1988. In that same year, it is undisputed that Wasson was aware not only that the results of this treatment were unsatisfactory to him, *but that he had a claim against Weiner.* By August of 1988, Wasson was aware of each and every injury for which he now seeks recovery. Wasson and his mother knew that he would have to undergo total hip replacement and believed this was a direct result of negligent medical treatment by Weiner. In fact, Wasson's mother filed a grievance against Weiner with the Medical Grievance Committee in 1988. Prior to May of 1990, within the two-year limitation period prescribed by section 10.01, Wasson's mother retained an attorney to represent her son. Yet suit was not filed until August of 1992, more than four years after Weiner last saw Wasson. No explanation has been provided for this delay.

Weiner invoked the statute of limitations applicable to claims for medical malpractice, section 10.01 of article 4590i.

## II

The Court's basis for striking down the statute before us is the open courts provision of the Texas Constitution. Tex. Const. art. I, § 13. Over the years our Court gradually has expanded the reach of this provision.

A detailed history of the origins of the open courts provision and of our earliest decisions construing it can be found in *LeCroy v. Hanlon,* 713 S.W.2d 335, 338–41 (Tex.1986). The history available to us indicates that the open courts provision was not controversial when adopted as part of our constitutions. It dates back to the Magna Carta. *Id.* at 339. Significantly, in the early decisions of our Court, the open courts provision was construed to ensure physical access to the courts or to preclude unreasonable bond requirements. *Dillingham v. Putnam,* 109 Tex. 1, 14 S.W. 303, 304–05 (1890); *Runge & Co. v. Wyatt,* 25 Tex. 291, 294 (1860); *see also LeCroy,* 713 S.W.2d at 340 and cases cited therein in notes 5–7.

Just recently, this Court acknowledged that historically, the courts of Texas did not have an expansive view of the open courts provision. *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259 (Tex.1994). With respect to the discovery rule, for example, Texas decisions gave statutes of limitation effect even where the fact of injury was

unknown to the plaintiff, notwithstanding the open courts provision. *Id.* at 262. We held in *Trinity* that the statute of repose applicable to architects and engineers did not violate the open courts provision because the common law recognized the validity of statutes of limitations, regardless of whether the injury had been discovered. *Id.* at 263. (The question of whether the discovery rule should be adopted prospectively under the particular facts in *Trinity* was expressly reserved. *Id.*) We quoted from *Houston Water–Works Co. v. Kennedy,* 70 Tex. 233, 8 S.W. 36, 37–38 (1888):

> If ... the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act.... [A] mere want of knowledge by the owner of injury to his property does not prevent the running of the statute.

*Id.* at 236, 8 S.W. 36.

The import of this recognition in *Trinity* is that there can be no doubt that the Texas courts in the *Kennedy* era never contemplated that the open courts provision of our Constitution precluded the Legislature from implementing a statute of limitations applicable to the claims of minors.

As an historical note, the 1869 Reconstruction Constitution contained not only the open courts provision (as is the case with all six Texas Constitutions), but also included article XII, section 14, which afforded express protection for the rights of infants, married women, and insane persons. Limitations was not permitted to run until at least seven years after the removal of their "respective legal disabilities." If the open courts provision was intended to provide essentially the same protection, the inclusion of this provision would have been unnecessary. However, I would not base the result in this case on such a slim reed, particularly in light of the subsequent decisions of our Court which have added more substance and contours to the open courts provision.

One of the earliest decisions of this Court to address the open courts provision in a context broader than physical access to the courts or unreasonable bond requirements was *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 560–61 (1916). The constitutionality of the Workmen's Compensation Act of 1913 was at issue. In addition to other state and federal constitutional challenges, the petitioner contended that because the statute abolished traditional common-law claims and defenses, it violated the open courts provision of the Texas Constitution. We recognized that "no one has a vested right in the continuance of present laws in relation to a particular subject." *Id.* 185 S.W. at 560. Our Court then held that the Legislature has the power to change and even to repeal the common law. The Legislature is imbued with the authority to abrogate entirely the common-law rule of contributory negligence as to employees and to relieve the employer of the consequences of its negligence. *Id.* 185 S.W. at 561. In enacting the workmen's compensation statute under consideration in *Middleton,* the Legislature substituted a new scheme of compensation for the traditional common-law remedies and defenses, but our Court did not expressly base its holdings on the fact of or the adequacy of this substituted compensation. (We recently held the 1989 Workers' Compensation Act (codified in 1993) constitutional in the face of an open courts challenge, finding that the benefits available under the Act adequately replaced a common-law negligence cause of action. *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504 (Tex.1995) (upholding Texas Workers' Compensation Act, 71st Leg., 2d C.S., ch. 1, 1989 Tex.Gen.Laws 1, now codified at TEX.LAB. CODE § 401.001 et seq.)).

The United States Supreme Court affirmed *Middleton,* concluding that there had been no deprivation of due process or liberty under the United States Constitution. *Middleton v. Texas Power & Light Co.,* 249 U.S. 152, 162–63, 39 S.Ct. 227, 230–31, 63 L.Ed. 527 (1919). The Supreme Court confirmed what this Court had held: that the rules of law, including imposition of liability without fault and exemption from liability, are sub-

ject to legislative modification. *Id.* at 163, 39 S.Ct. at 231. The United States Supreme Court did, however, indicate that a common-law claim or right could not be abrogated in its entirety unless "a reasonable substitute for the legal measure of duty and responsibility previously existing" was established. *Id.*

This Court next had occasion to consider article I, section 13, in two cases involving attempts by municipalities to limit their liability for defects in streets and sidewalks. The first was *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 947 (1932), in which the city charter provision at issue required actual notice twenty-four hours *prior* to an accident as a prerequisite to making a claim. The notice provision was held to violate the "due process" rights accorded under article I, section 13. The term "open courts" was not mentioned. In *City of Terrell v. Howard*, 130 Tex. 459, 111 S.W.2d 692 (1938), the city charter required a claimant to give notice of the injury within ninety days following the accident and to obtain the consent of a majority of the commissioners to bring suit. We held that the obvious effect was to deny the plaintiff recourse in the courts. The plaintiff's ability to sue depended on the will of the commissioners. *Id.* 111 S.W.2d at 694.

It was not until *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951 (1955), that this Court engaged in any extensive analysis of the substance of the "open courts" language in article I, section 13, in the context of limiting common-law causes of action. As in *Hanks* and *City of Terrell*, the plaintiff was injured when she tripped on an obstruction in a street or sidewalk. The city charter contained an absolute defense: the city was not liable for injury caused by such defects. On rehearing in *Lebohm*, this Court reviewed the jurisprudence in our state and in other jurisdictions regarding the authority of a legislature to effect change in the common law. For the first time, this Court included in the open courts analysis the question of whether a substitute remedy had been provided in limiting a common-law cause of action. We emphasized that the United States Supreme Court in *Middleton, supra*, upheld the Workmen's Compensation Act on the basis that "a reasonable substitute" for the previous legal

measure of duty and responsibility was established. *Id.* at 954 (emphasis omitted).

In *Lebohm*, we capsulized the import of the open courts section of our state constitution as follows:

> Thus it may be seen that legislative action withdrawing common-law remedies for well established common-law causes of action for injuries to one's "lands, goods, person or reputation" is sustained only when it is reasonable in substituting other remedies, or when it is a reasonable exercise of the police power in the interest of the general welfare. Legislative action of this type is not sustained when it is arbitrary or unreasonable.

*Id.* at 955.

In applying these principles to the charter provision in *Lebohm*, we held that no broad policy or general welfare considerations were advanced to justify the city's complete bar of claims as a reasonable exercise of the police power. We observed that we "could think of none inasmuch as the effect of the provision extends only to the city limits of the City." Importantly, however, we noted:

> In this connection, we are not to be understood as holding that the Legislature could not by general law abolish all causes of actions against cities for injuries growing out of simple negligence in the maintenance of streets.

*Id.*

We thus recognized in *Lebohm* that there may be instances in which the state can abolish common-law causes of action altogether if broad public policy or general welfare considerations exist. We adhered to this statement of the law in *Waites v. Sondock*, 561 S.W.2d 772, 774–75 (Tex.1977), but held that the Legislature could not constitutionally mandate a legislative continuance when the party opposing the continuance faced irreparable harm from the delay. In *Waites*, a mother in dire need of child support payments sought to compel her former husband to comply with the child support order. The trial court granted a legislative continuance, deferring the contempt hearing for at least six months. This Court analyzed the legislative policy behind the mandatory

continuance and found it arbitrary and unreasonable as applied to the facts of the case before it, citing *Lebohm, supra.* 561 S.W.2d at 774.

The decision in *Sax*, which the Court today finds dispositive, likewise relied on *Lebohm*, and quoted the passage from *Lebohm* which recognizes that even if no reasonable remedy is substituted, the Legislature may nevertheless withdraw common-law remedies in the exercise of the police power for the general welfare as long as the legislative action is not arbitrary or unreasonable. *Sax*, 648 S.W.2d at 665. The Court in *Sax* specifically reaffirmed the interpretation of article I, section 13, set out in *Hanks, Lebohm,* and *Waites,* and stated:

> We hold, therefore, that the right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature *absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress.* In applying this test, we consider both the general purpose of the statute and the extent to which the litigant's right to redress is affected.

*Id.* at 665–66 (emphasis added).

However, subsequent decisions have focused more on the last sentence of the foregoing passage, "the extent to which the litigant's right to redress is affected," rather than focusing on whether the abolition of a common-law cause of action was a reasonable exercise of police power. Most notably, in the case of *Lucas v. United States*, 757 S.W.2d 687, 702 (Tex.1988) (Phillips, C.J., dissenting), Chief Justice Phillips urged the Court to adhere to the test clearly articulated in *Lebohm.* *Id.* at 716. His opinion contains a thorough and thoughtful analysis of the open courts provision, including its historical roots and its development in this and other jurisdictions. The decision in *Sax* was considered at some length in that dissent. *Id.* at 716–17. In my view, Chief Justice Phillips correctly analyzed the open courts provision, and disapproved of the fact that

> [w]hile *Sax* does not necessarily compel an incorrect analysis, in practice it has resulted in an almost exclusive focus on "the

extent to which the litigant's right to redress is affected," with an almost total disregard of "the general purpose of the statute."

*Id.* at 716.

He noted that in *Sax* and its progeny, this Court has emphasized the nature and extent of the restriction on common-law causes of action to the virtual exclusion of other factors. "[T]he Court's 'first concern' has been the absence of adequate substitute remedies." *Id.* at 717. The shortcoming of such an approach is that it leaves judges with unfettered discretion to rely on their own personal predilections in determining whether the substituted remedy is reasonable, without considering the right of the Legislature to exercise its police power and to weigh the competing considerations for itself. The reasonableness of the substituted remedy has been balanced against the reasonableness and necessity of the legislation and its underlying purposes. *See generally Lucas,* 757 S.W.2d at 717 (Phillips, C.J. dissenting); *see also Nelson v. Krusen,* 678 S.W.2d 918, 922 (Tex.1984).

Chief Justice Phillips advocated that the Court return to the language of *Lebohm* and separate the issue of a reasonable alternative remedy from the issue of a reasonable exercise of police power:

> If the Legislature has provided or left in place a reasonable alternative remedy, judicial scrutiny is at an end, and properly so. The Legislature should have absolute discretion to substitute one adequate remedy for another, without its choice being subjected to judicial re-evaluation. If the Legislature has not provided or left in place a reasonable alternative remedy, however, the Constitution requires a second, separate inquiry. The courts must independently determine if the legislative action constitutes a reasonable exercise of the police power.

*Lucas,* 757 S.W.2d at 718.

Chief Justice Phillips correctly concluded that the determination of whether there had been a reasonable exercise of police power would not be satisfied by a mere finding that

the statute is rationally related to a legitimate state interest:

> A "reasonable exercise of the police power in the interest of the general welfare" thus requires that the statute address an important, not merely a legitimate, state interest, that such interest be perceived and articulated by the state, and that the remedies provided bear a real relationship to the social evil being addressed.

*Id.*

I would apply the test found in *Lebohm* and in Chief Justice Phillips' dissent in *Lucas,* which is not at odds with the test set out in *Sax.* To do otherwise is to restrict the Legislature unduly in carrying out its obligations under our Constitution: to exercise its police power where necessary to "ameliorat[e] a rationally perceived social evil." *Id.* Today's decision gives undue and overriding emphasis to the nature and extent of the restriction of common-law causes of action. The Court concludes that the minor's cause of action has been totally abrogated and that no reasonable substitute has been provided. The Court concludes without discussion that section 10.01 is not a reasonable exercise of the police power.

I turn to the questions to be answered under the test set forth in *Lebohm* and in *Sax:* 1) if a common-law cause of action has been restricted or withdrawn by the Legislature, does section 10.01 substitute a reasonable remedy, and 2) if no reasonable remedy was substituted, is section 10.01 nevertheless a reasonable exercise of police power by the Legislature.

### III

#### A

The linchpin of the Court's holding today is that because of Wasson's legal disability as a minor, he could not bring suit in his own right until he reached majority. Accordingly, the Court concludes that the open courts provision would be violated if section 10.01 cut off his cause of action before he had the legal capacity to bring suit. There is no contention that Wasson otherwise would have been incompetent to bring suit.

It is beyond dispute that the Legislature has the power to remove the legal disability of a minor such as Wasson. The legal disability is itself a statutory creation, TEX.CIV. PRAC. & REM.CODE § 16.001, and in numerous areas, our laws recognize that even before legal majority is attained, older minors may be entrusted with certain decisions, and they are accountable for their actions. Children as young as fifteen may be certified for criminal punishment as adults. TEX.FAM.CODE § 54.02. At age twelve, the Family Code allows a minor to choose his or her managing conservator "by writing filed with the court," subject to court approval. TEX.FAM.CODE § 14.07(a). Similarly, a minor twelve years and older may select his or her own guardian of their person or estate subject to court approval. TEX.PROB.CODE § 118(a). In many instances, requiring a minor to bring a medical malpractice claim by age fourteen would not be unreasonable or arbitrary, particularly in light of the ways in which the law differentiates between children of various ages.

An argument can be mounted that section 10.01 removed the legal disability of minors age twelve and over for purposes of bringing a medical malpractice action. The text of section 10.01 suggests such a construction: "minors under the age of 12 years shall have until their 14th birthday *in which to file,* or have filed on their behalf, the claim." TEX. REV.CIV.STAT. art. 4590i, § 10.01 (Vernon Supp.1994) (emphasis added).

The Court in *Sax* did not consider whether there had been a removal of disability by the Legislature for purposes of instituting medical malpractice actions. *Sax* appears to have assumed that minors could not bring suit on their own behalf. *See Barlow v. Humana, Inc.,* 495 So.2d 1048, 1051 (Ala.1986) (distinguishing *Sax* on the basis that in Alabama, a minor does not lack capacity to sue).

However, I do not believe it is reasonable to construe section 10.01 as lowering the age of a minor's disability. The practical problems inherent in such a construction include the fact that the legal disability was not expressly removed for purposes of entering into a contract, which presumably would be necessary to enable a minor personally to

engage counsel to bring suit. The statute should be construed, however, to require suit to be brought on behalf of the minor, or in his or her name as the real party in interest.

Nevertheless, the fact that the Legislature *could have* removed the legal disability of a minor such as Wasson and accordingly, could have removed any open courts question is highly significant. The Legislature unmistakably indicated in section 10.01 that as between the public policies underlying the disability statute, TEX.CIV.PRAC. & REM.CODE § 16.001, and those leading to the passage of section 10.01, the interests served by section 10.01 are paramount. In view of the fact that the Legislature easily could have overridden its own disability statute, this Court should give considerable deference to the Legislature's determination that it is reasonable to require suit to be brought on behalf of a minor twelve years or older within the time specified in section 10.01. We did not consider this point in *Sax*.

Moreover, the statute before the Court in *Sax*, article 5.82 of the Insurance Code, differs from section 10.01 in at least one important respect. The age limit within which a minor or someone on his or her behalf was required to file suit was increased from eight to fourteen years of age. This age was not chosen at random by our Legislature. The Legislature considered the opinions of a number of experts as to when a minor could verbalize inner problems and could directly communicate that he or she was experiencing a health problem. The Legislature also considered the age by which an impairment to the development of the child could be recognized. *See* Debate on Tex.H.B. 1048 on the Floor of the House, 65th Leg., R.S. 138–41 (March 22, 1977) (transcript available from House Committee Services) (statement of Representative Bock explaining expert opinions considered by the House State Affairs Committee in arriving at the age of fourteen). In enacting section 10.01, the Legislature rejected the lower age of eight set forth in the *Sax* statute. In most cases, by the time a child attains the age of twelve, a competent parent or legal guardian should be able to determine if an injury to the child has occurred as a result of negligent medical treatment.

Requiring suit to be brought on behalf of the minor is a reasonable substitute for removing the right of a fifteen year old to bring suit in his or her own capacity after reaching majority, provided that the minor has a legally competent parent or legal guardian who has no conflict of interest that would preclude him or her from acting in the best interests of the minor. *Compare Greathouse v. Fort Worth & Denver City Ry. Co.*, 65 S.W.2d 762, 765 (Tex.Comm'n App.1933, holding approved). The minor's rights are adequately safeguarded. *See Smith v. Cobb County–Kennestone Hosp Auth.*, 262 Ga. 566, 423 S.E.2d 235, 239–40 (1992); *Thompson v. Franciscan Sisters Health Care Corp.*, 218 Ill.App.3d 406, 161 Ill.Dec. 162, 165, 578 N.E.2d 289, 292 (1991). The Family Code empowers parents to protect the legal interests of their child, recognizing their right "to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." TEX.FAM. CODE § 12.04(7). The Rules of Civil Procedure similarly enable parents as next friends to enter into settlement agreements on behalf of their minor children. TEX.R.CIV.P. 44. In addition to having the right to pursue a claim on behalf of their children, parents usually have a financial incentive to bring an action on behalf of a child who has been injured by medical malpractice. *See Mominee v. Scherbarth*, 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717, 739 (1986) (Wright, J., dissenting).

I recognize that in *Sax*, the Court declined to accept suit by a parent or guardian as a reasonable substituted remedy. On this point, I fundamentally disagree with the assumption in *Sax* that competent parents cannot be trusted to act in the best interest of their child. 648 S.W.2d at 667. Society entrusts the care of children to their parents, and the Legislature was entitled to conclude that parents may be relied upon to bring a cause of action for injuries to their child resulting from medical malpractice. *See Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7, 20 (Mo.1986) (Welliver, J., dissenting); *Mominee*, 503 N.E.2d at 739 (Wright, J., dissent-

**328**

ing). The law presumes that parents will take care of their children's needs in a variety of contexts. Parents are required by law to provide for the care, support, and nurture of their children. TEX.FAM.CODE § 12.04. In the area of child custody, this Court has explained that the presumption that a child is best served by awarding custody to his or her natural parents is

> based upon a logical belief that the ties of the natural relationship of parent and child ordinarily furnish strong assurance of genuine efforts on the part of the custodians to provide the child with the best care and opportunities possible, and, as well, the best atmosphere for the mental, moral and emotional development of the child.

*Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex.1963). This expression stands in stark contrast to the portrayal of parents in *Sax* as potentially "ignorant, lethargic, or lack[ing] concern." *Sax,* 648 S.W.2d at 667.

This conclusion in *Sax* is one aspect of our decision which should be reconsidered. In cases involving guardians for the mentally incompetent, this Court has intimated that the rights of one under a legal disability might be cut off by the action or inaction of a legal guardian. Most recently, in *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 756 (Tex.1993), our Court held that two suits filed by Ruiz and his wife before Ruiz was adjudged incompetent and *before* his wife was appointed guardian of his estate and person did not commence the running of limitations under section 16.003 of the Texas Civil Practice & Remedies Code. *Accord Hopkins v. Spring Indep. Sch. Dist.,* 706 S.W.2d 325, 326 (Tex. App.—Houston [14th] 1986), *aff'd,* 736 S.W.2d 617 (Tex.1987). *Ruiz* did *not* involve a challenge under the open courts provision. It was decided solely on the basis of the statute's language and the policies underlying its adoption. In *Ruiz,* we gave considerable deference to a "considered *legislative judgment* that in enumerated circumstances the strong policy in favor of prompt disposition of disputes must give way to the need to protect a plaintiff who is unable to protect him or herself." 868 S.W.2d at 756 (quoting *Tzolov v. International Jet Leasing, Inc.,* 232 Cal.App.3d 117, 283 Cal.Rptr. 314, 317–18

(1991)) (emphasis added). In *Ruiz,* we expressly left open the question of whether an action commenced on behalf of a legally disabled individual could operate as a bar:

> This does not mean that an action commenced by, or on behalf of, a legally disabled individual can never be given preclusive effect.

868 S.W.2d at 756.

In *Tinkle v. Henderson,* 730 S.W.2d 163 (Tex.App.—Tyler 1987, writ ref'd), which was decided on an open courts issue, it was specifically noted that Tinkle, who became mentally incompetent following medical treatment, did not have a guardian at the time of the claimed injury. It was held that limitations had not run against him.

Earlier decisions in our state recognized that in some instances, rights of the mentally incompetent can be lost due to the passage of time, notwithstanding the legal disability. In *McLendon v. Comer,* 200 S.W.2d 427 (Tex. Civ.App.—Texarkana 1947, writ ref'd n.r.e.), Homer Prior was adjudged a person of unsound mind, and a guardian was appointed. The guardian brought suit on Prior's behalf, foreclosing on a vendor's lien and obtaining an additional award of $1,200. The defendants in that suit deeded the tract at issue to the guardian in cancellation of the judgment. In later years, it was contended that title to this property had been obtained by the adverse possession of Comer and those claiming through him. It was held that limitations had run against Prior, in spite of his incapacity, because legal title previously had vested in his guardian following the foreclosure suit by the guardian on behalf of Homer. *Id.* at 430. This Court reached the same legal conclusion in *Broussard Trust v. Perryman,* 134 S.W.2d 308, 313 (Tex.Civ.App.—Beaumont 1939, writ ref'd).

Our Court indicated in *Latcholia v. Texas Employers Ins. Ass'n,* 140 Tex. 231, 167 S.W.2d 164 (1942) that a minor who was not totally and permanently incapacitated could be required to give the statutory notice under the Workmen's Compensation Act then in effect or have his claim barred. *Id.* at 168. In *Latcholia,* the Court found the plaintiff to be totally and permanently disabled. Based on a review of the language in the Act, the

Court held that under those circumstances, good cause had been shown for the minor's failure to give notice of the injury. However, the Court pointed out that the statute allowed a minor to appear before the board without being represented by a guardian or next friend in cases in which the disability was temporary or partial, and the board was authorized to pay the award directly to the minor in such cases. The statute prohibited such a procedure only in the case of total and permanent disabilities. *Id.* 167 S.W.2d at 167. We further noted that the plaintiff in this case had no guardian and that no one came forth to act as next friend until his father filed a claim. *Id.* 167 S.W.2d at 166.

More recently, at least one court of appeals has held that the notice provisions under our previous Workmen's Compensation Act applied to a minor, and the minor's claim for common-law negligence was barred because the minor did not give notice. *Whitehead v. American Indus. Transp., Inc.,* 746 S.W.2d 273, 274–75 (Tex.App.—Texarkana 1988, writ denied). In *Whitehead,* a minor was killed on the job. He had failed to give written notice to his employer that he was reserving his rights to a common-law negligence action. As applied to the deceased minor, who was seventeen at the time he began his employment, the court held there was no constitutional violation:

> [W]e would be required to find that persons under eighteen, regardless of their age or experience, are incapable as a matter of law of making an intelligent choice concerning their right to compensation for injuries. This we are unwilling to do. The Legislature may exempt all persons under eighteen years from the waiver provisions of the Act if it desires, but the Constitution, in our judgment, does not require it.

*Id.* at 275.

The notice requirements of the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE § 101.101(a)–(c), were likewise found applicable to a claimant rendered physically and mentally incompetent where a guardian of her estate had been appointed. *Rath v. State of Texas,* 788 S.W.2d 48, 51 (Tex. App.—Corpus Christi 1990, writ denied). Citing *McCrary v. Odessa,* 482 S.W.2d 151,

154–55 (Tex.1972), the court of appeals held: "[s]ince the appointment of a guardian with authority to file a claim or file suit removed [her] disability, her failure to comply with the notice requirement was not excused." 788 S.W.2d at 51. *McCrary* held that a sixty-day notice requirement in a city charter violated the open courts provision as applied to a minor. *Rath* apparently relied on the statement in *McCrary* that the minor could not institute or settle a claim in court and was therefore excused from compliance with the notice provision until the disabilities were removed. *McCrary* did not explore the question of whether the appointment of a guardian constituted a removal of disabilities and consequently would have affected the result, but *McCrary* did cite *City of Houston v. Bergstrom,* 468 S.W.2d 588 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.), as a "carefully considered case." 482 S.W.2d at 154. *Bergstrom* held that a thirty-day notice requirement violated the open courts provision as applied to a minor, but its holding was based in part on the fact that the plaintiff had no court-appointed guardian or guardian ad litem, and no one had established himself or herself as her next friend. 468 S.W.2d at 591.

In other jurisdictions, the general rule is that if the disability statute is a general one, and the statute of limitations is likewise a general one, limitations will not run against a minor or an incompetent simply because a parent or next friend could have brought suit. *See, e.g., Young v. Key Pharmaceuticals, Inc.,* 112 Wash.2d 216, 770 P.2d 182, 185 (1989). However, some courts have held that if a statute is specific or, in some cases, when a legal guardian is appointed by a court, limitations can commence to run. *Dye v. Fremont County Sch. Dist. No. 24,* 820 P.2d 982, 985–86 (Wy.1991) (parent's failure to give timely notice under tort claims statute did not bind minor; time for filing begins to run when guardian ad litem appointed); *Baker v. Binder,* 34 Mass.App.Ct. 287, 609 N.E.2d 1240, 1243 (1993) (father automatically appointed next friend when he filed suit on behalf of minor; limitations ran from that date as to minor's claims).

Section 10.01 is not a general statute, and it is not merely permissive. It is very specific in directing that suit must be brought on behalf of a minor within certain time limits. It should be given effect by this Court.

A different result may obtain if a plaintiff demonstrates that he or she had no parent or legal guardian who was competent to bring suit, or that his or her parents or legal guardian had a conflict of interest that prevented them from acting in the minor's best interests. In such circumstances, the statute of limitations may well be unconstitutional as applied to such a plaintiff. But requiring a competent parent or legal guardian to bring suit does not constitute "an impossible condition" prohibited by the open courts provision.

The concept of an "impossible condition" was explained in *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984). In that case, parents of a child born with Duchenne muscular dystrophy brought a "wrongful birth" suit, contending that the physician who treated the mother prior to and during pregnancy erroneously assured them that she was not a genetic carrier of the disease. (The cause of action asserted was that of the parents. They did not bring suit in a representative capacity as to this claim.) Suit was brought more than three years from the date the child was born, shortly after the parents alleged to have first discovered their child had the disease. Limitations under former article 5.82, section 4 was asserted as a defense, and its constitutionality under the open courts provision was challenged. The Court in *Nelson* emphasized that the common theme of Texas open courts decisions is that the Legislature cannot impose an impossible condition upon a potential claimant. *Id.* at 922. In discussing *Sax*, the Court noted that the case for an open courts violation was even more compelling in this wrongful birth suit than in *Sax* because in *Sax* "it was possible for the parents to bring their children's suits in time...." *Id.* at 923. Far from creating an impossible condition, section 10.01 tolls the statute for up to twelve years to allow parents or a legal guardian to bring a medical malpractice claim. Similarly, in *Tinkle v. Henderson, supra,* which ·held section 10.01 unconstitutional as applied to a

mentally incompetent person where no guardian had been appointed, it was recognized that children are more likely than the mentally incompetent to have someone intimately interested in their welfare and inclined to act on their behalf. 730 S.W.2d at 166.

Under standard principles of statutory construction, this Court must construe the statute to render it constitutional, if possible. *See Key Western Life Ins. Co. v. State Bd. of Ins.,* 163 Tex. 11, 350 S.W.2d 839, 849 (1961). It is to be presumed that the Legislature has not acted arbitrarily or unreasonably:

> In passing upon the constitutionality of a statute, we begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours.

*Garcia,* 893 S.W.2d at 520 (quoting *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968)).

In the case before the Court today, Wasson was fully cognizant of his injury and of his potential claim, as was his mother. There is no indication that his mother or his father could not have instituted suit within the limitations period. Under these circumstances, the substituted procedure in section 10.01 which requires suit to be brought on behalf of Wasson within certain time limits is reasonable.

### B .

The inquiry is not at an end even if one were to conclude that the legislative scheme of allowing suit to be brought on behalf of a minor is not a reasonable substitute for limiting a minor's right to sue. The Legislature has the power to abrogate common-law causes of action altogether in the proper exercise of its police power. *See* discussion of *Middleton* and *Lebohm, supra.* I would hold that the exercise of legislative power was constitutional here.

The Legislature articulated its findings and the basic purposes of article 4590i in

section 1. Those findings are lengthy and will not be quoted here. In sum, the Legislature found that there is a medical malpractice crisis in this state which has had a material adverse effect on the cost and availability of health care. The Legislature found it likely that there would be further reductions in the availability of health care in the future. These findings meet the test of an "important" state interest. The remedy, limiting the time over which physicians and health care providers face liability, is directly related to the crisis identified by the Legislature and bears a real relationship to the articulated legislative goal of making health care more affordable, and above all available, for all Texans. The Legislature reasonably concluded that reducing the potential of long-term liability would help to ease the strain on health care services. *See Thompson,* 578 N.E.2d at 291; *Rohrabaugh v. Wagoner,* 274 Ind. 661, 413 N.E.2d 891, 894 (1980); *Mominee,* 503 N.E.2d at 738 (Wright, J., dissenting). Without section 10.01, a physician could be forced to defend a claim arising out of injuries incurred during childbirth up to twenty years after the occurrence. Page Keeton explained in his memorandum to the Texas Medical Professional Liability Study Commission that a medical malpractice statute of limitations is aimed at "the prevention of the bringing of stale claims or claims that are made so long after the so-called negligent event occurred as to make it virtually impossible to ascertain the facts."

Significantly, the statute at issue in *Sax* contained no such findings. The Court in *Sax* did not consider these public policy concerns or whether the legislative scheme bears a real relationship to the social evils being addressed. Taken in tandem with the Legislature's adoption of a higher threshold age at which limitations begins to run, the legislative findings support the constitutionality of this statute, and there is a valid basis for drawing distinctions between the statute under scrutiny in *Sax* and section 10.01.

Admittedly, the findings and stated purposes of article 4590i are many of the same policy matters considered and rejected by the Court in *Lucas v. United States, supra.* In *Lucas,* our Court held that the caps on the dollar amounts recoverable under sections 11.02 and 11.03 of article 4590i violated the open courts provision. 757 S.W.2d at 692. Putting aside the question of whether the result in *Lucas* was correct, it is distinguishable. The principal infirmity of the damage caps was that it was unfair and unreasonable to impose the burden of supporting the medical care industry solely upon those persons who are most severely injured and most in need of compensation. *Id.* This Court held:

> In the context of persons catastrophically injured by medical negligence, we believe it is unreasonable and arbitrary to limit their recovery in a speculative experiment to determine whether liability insurance rates will decrease.... In any event, we hold it is unreasonable and arbitrary for the legislature to conclude that arbitrary damages caps, applicable to all claimants no matter how seriously injured, will help assure a rational relationship between actual damages and amounts awarded.

757 S.W.2d at 691 (emphasis omitted).

The statute of limitations in section 10.01 does not work such a hardship. The minor is entitled to recover for *all* injuries. There is a demonstrable nexus between limiting the time in which suit for malpractice must be brought and the goals articulated by the Legislature, which include availability and affordability of adequate professional liability insurance and hence, the availability and affordability of health care services. It is within the authority of the Legislature to make reasoned adjustments in the legal system, and we so held in *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). (*Morrison* held the intent of the Legislature in section 10.01 was to abolish the discovery rule. There, the patient discovered a hole in her bladder six months before limitations ran, but the running of the statute was not extended.) *Compare Neagle v. Nelson,* 685 S.W.2d 11 (Tex. 1985) (section 10.01 did not cut off claim for sponge left in abdomen).

While a number of other decisions of our Court and the courts of appeals have considered whether a statute can cut off the claims of a minor, the propriety of Legislature's purported exercise of its police power was not presented. *See, e.g., McCrary v. City of*

*Odessa,* 482 S.W.2d 151, 153–54 (Tex.1972) (sixty-day notice requirement under city charter unconstitutional as to minors under open courts provision); *Ladehoff v. Ladehoff,* 436 S.W.2d 334, 337 (Tex.1968) (by virtue of specific probate code provision, minor not personally served may sue to set aside will ten years later when he attains majority); *Latcholia v. Texas Employers Ins. Ass'n,* 140 Tex. 231, 167 S.W.2d 164, 167 (1943) (minor totally and permanently disabled with no guardian not required to give thirty-day notice under the Workmen's Compensation Act); *City of Houston v. Bergstrom,* 468 S.W.2d 588, 591 (Tex.App.—Houston 1971, writ ref'd n.r.e.) (minority alone will excuse compliance with notice requirement).

Looking to other jurisdictions, many courts have upheld statutes of limitation applicable to the claims of minors against due process and open courts challenges. *See Barlow v. Humana, Inc.,* 495 So.2d 1048, 1052 (Ala. 1986) (open courts); *Smith v. Cobb County–Kennestone Hosp.,* 262 Ga. 566, 423 S.E.2d 235, 239–40 (1992) (access to courts); *Maine Med. Ctr. v. Cote,* 577 A.2d 1173, 1175–76 (Me.1990) (open courts); *Bissell v. Kommareddi,* 202 Mich.App. 578, 509 N.W.2d 542, 544 (1993) (open courts); *Thompson v. Franciscan Sisters Health Care Corp.,* 218 Ill.App.3d 406, 161 Ill.Dec. 162, 578 N.E.2d 289 (1991) (due process); *see also Rohrabaugh,* 413 N.E.2d at 891; *Shaw v. Zabel,* 267 Or. 557, 517 P.2d 1187, 1188 (1974) (en banc); *Licano v. Krausnick,* 663 P.2d 1066 (Colo.Ct.App. 1983) (all upholding statute against equal protection challenges). A number of other jurisdictions have struck down similar statutes on the basis of due process or open courts guarantees. *See, e.g., Barrio v. San Manuel Div. Hosp.,* 143 Ariz. 101, 692 P.2d 280, 286 (1984) (open courts); *Strahler,* 706 S.W.2d at 11–12 (access to courts); *Mominee,* 503 N.E.2d at 723 (due process); *see also Whitlow v. Board of Educ.,* 190 W.Va. 223, 438 S.E.2d 15, 23 (1993) (equal protection).

Although I would not hold that section 10.01 could never be unconstitutional in its application, it is not unconstitutional as applied in this case. A statute need not be declared unconstitutional simply because it

might be unconstitutional as applied to the facts of another case. *See Nelson,* 678 S.W.2d at 923. Emmanuel Wasson knew of his claim as early as 1988, and his mother hired a lawyer to represent him before May of 1990, which was still within the two-year limitations period under Section 10.01. Wasson was not the plaintiff the Court was concerned about in *Sax.* His right to pursue his claim was not precluded by the statute, but rather because he slept on his rights.

It is not necessary to decide whether the exercise of the Legislature's police power would be proper as applied to different facts, such as a case where the minor's parent was incompetent. In this regard, it should be noted that the result I would reach as to Wasson is not necessarily at odds with *Tinkle, supra,* which held section 10.01 unconstitutional as applied to the mentally incompetent. It was noted in that decision that no guardian had been appointed, and the court did not engage in any analysis of the police power of the Legislature to abrogate common-law causes of action.

### IV

A fundamental tenet in our jurisprudence is the recognition of the need for consistency and predictability in the decisions of our courts. This Court should be loath to overrule its prior decisions, particularly where an opinion has been cited and relied upon as frequently and as recently as has *Sax.* Our Court should not succumb to a temptation to continually revisit prior decisions as new fact situations arise or the concerns of the public shift. The Court similarly stresses the importance of stare decisis, but misapprehends the application of that doctrine to the case before us. The Court concludes that in order to uphold the constitutionality of section 10.01, it is compelled to "overrule *Sax* or to somehow limit the holding of that case to its facts." 900 S.W.2d 320. *Sax* should and must be limited to its facts in *some* respects because the Court had before it a different statute with a considerably different legislative history and different provisions. But the basic principles of *Sax* are sound, with limited exceptions noted above. Those principles should lead this Court to uphold sec-

tion 10.01. The application of the rationale of *Sax* to this case leads only to a different *result,* not to a departure from the essence of *Sax* or from the decisions of this Court on which it was based.

The Court concludes that Wasson and his parents, and those similarly situated, may justifiably rely on *Sax* and wait well beyond the statutory limitation period before bringing suit. In support of this premise, the Court cites Justice Scalia's concurring opinion in *Quill Corp. v. North Dakota,* 504 U.S. 298, 319, 112 S.Ct. 1904, 1916, 119 L.Ed.2d 91 (1992), which states "reliance upon a square, unabandoned holding of the Supreme Court is *always* justifiable reliance." 504 U.S. at 321, 112 S.Ct. at 1916 (emphasis in original). The balance of that quote, omitted by the Court, notes "reliance alone may not always carry the day." The most important aspect of Justice Scalia's comment, however, is its context. Justice Scalia observed:

> Congress has the final say over regulation of interstate commerce, and it can change the rule of Bellas Hess [the Supreme Court's longstanding decision] by simply saying so. We have recognized that the doctrine of stare decisis has "special force" where "Congress remains free to alter what we have done."

504 U.S. at 320, 112 S.Ct. at 1916.

That principle applies with force here. *Sax* was decided *before* section 10.01 was renewed and extended by the Texas Legislature. The statute of limitations at issue in *Sax* has been altered by the Texas Legislature. Under such circumstances, it is not reasonable for any party to ignore a statute on the basis of a *prior* decision of this Court. Section 10.01 has never been held unconstitutional as applied to minors by this or any other court since its enactment in 1977, until today's decision. It is dangerous precedent indeed to hold that reliance by a party on his or her extrapolation of what this Court has held in other cases is a justification for striking down an otherwise valid act of the Legislature.

\*　\*　\*　\*　\*　\*

Because I would conclude that section 10.01 of the Medical Liability Act does not violate the open courts provision of the Texas Constitution under the facts of this case, I respectfully dissent.