Elena SAVAGE, Appellant,

v.

PSYCHIATRIC INSTITUTE OF BEDFORD, INC., d/b/a Bedford Meadows Hospital; N.M.E. Psychiatric Properties, Inc.; Psychiatric Institutes Of America, Inc.; N.M.E. Specialty Hospitals, Inc.; National Medical Enterprises, Inc.; and Elizabeth John, M.D. Appellees

No. 2–97–041–CV.

Court of Appeals of Texas,
Fort Worth.

March 19, 1998.

748

Jay K. Gray, Chris Cessac, Noteboom & Gray, Hurst, for appellant.

Richard L. Griffith, Evelyn R. Leopold, Cantey & Hanger, L.L.P., Fort Worth, Charles T. Frazier, Jr., Andrea M. Kuntzman, Cowles & Thompson, Dallas, Robert B. Krakow, John R. Crews, C. Glen Morris, Gibson, Dunn & Crutcher, L.L.P., G. Dennis Sheehan, Haynes & Boone, L.L.P., Fort Worth, for appellees.

Before LIVINGSTON, RICHARDS and BRIGHAM, JJ.

## OPINION

RICHARDS, Justice.

### Introduction

This is an appeal from a summary judgment entered in favor of Psychiatric Institute of Bedford, Inc. d/b/a Bedford Meadows Hospital; N.M.E. Psychiatric Properties, Inc.; Psychiatric Institutes of America, Inc.; N.M.E. Specialty Hospital, Inc.; National Medical Enterprises, Inc.; and Elizabeth John, M.D. ("appellees") and against Elena Savage ("Savage") on her medical malpractice and fraud claims. The trial court granted summary judgment on limitations grounds. In two points, Savage argues that the trial court erred in granting summary judgment because genuine issues of material fact exist regarding (1) whether Savage's fraud claims were brought within the four-year limitation period applicable to fraud claims and (2) whether Savage's health care liability and fraud claims were timely filed because the limitations period was tolled due to appellees' fraudulent concealment. Because we hold that 1) the trial court properly applied the two-year statute of limitations found in article 4590i to all of Savage's claims, including her claim of fraud and that 2) Savage is not entitled to rely on the doctrine of fraudulent concealment, we affirm the summary judgment.

### Summary of Facts

In April 1990, when Savage was fifteen years old, she suffered from depression related to her then recent break-up with her boyfriend, stress at school, and her family relationships. Her mother became concerned after she noticed Savage had cried non-stop for about a two-week period. Savage admitted to her mother that she slit one of her wrists after the break-up. Savage asked her mother if she could either leave home or get some help. Based on a recommendation from a family friend, Savage visited with staff members in the adolescent unit at Bedford Meadows Hospital.

The staff concluded that Savage suffered from numerous signs of depression including sleeplessness, frequent bad dreams, lack of energy, variable appetite, weight loss, frequent crying, and feelings of hopelessness and worthlessness. Based on the severity of her problems, the staff at Bedford Meadows encouraged Savage to voluntarily admit herself for in-patient therapy. Savage was voluntarily admitted on April 21, 1990 and was discharged on May 30, 1990. She turned eighteen years old on September 30, 1992.

On August 31, 1995, more than five years after she was discharged from Bedford Meadows and almost three years after she reached the age of eighteen, Savage filed suit against numerous defendants for the treatment she received at Bedford Meadows. Savage alleged generally that she was pressured into voluntarily admitting herself to Bedford Meadows, that she was not allowed to leave the hospital despite many requests, that she was forced to sleep in the hall on one occasion, that she was denied phone privileges several times, and that she was once

forced to endure five hours of "time out," all "despite the fact that she had no mental illness requiring in-patient care."

Savage asserted the same causes of action against all appellees: negligence, false imprisonment, intentional infliction of emotional distress, fraud, and violations of the Deceptive Trade Practices Act ("DTPA"). She alleged appellees were negligent in (1) failing to determine whether she met hospital and statutory criteria for voluntary admission, (2) failing to orally notify her of her rights as a patient, (3) failing to provide treatment in the least restrictive appropriate setting, (4) failing to provide an individualized treatment plan, (5) failing to provide adequate medical and psychiatric care, (6) restricting her visits with relatives without proper justification, and (7) detaining her against her will. Savage further alleged that she "was detained wilfully [sic] and unlawfully against her will," which constituted false imprisonment. She argued that appellees' "actions in forcing [her] to remain in Bedford Meadows after it became clear that the institutionalization was extremely stressful" constituted intentional infliction of emotional distress. Finally, Savage alleged that appellees' representations regarding her need for hospitalization, her rights as a patient, and the type of treatment she would receive constituted false, misleading, or deceptive acts or practices in violation of the DTPA.

On April 19, 1996, Dr. John filed a motion for summary judgment on various grounds, including that Savage's claims were barred by the statute of limitations. Thereafter, the court and the parties agreed that all other defendants would submit motions for summary judgment on limitations grounds and that the court would consider the motions solely on that ground. Savage filed a response to the motions and presented her own summary judgment evidence. On October 8, 1996, after considering the pleadings and the evidence and after conducting a hearing on the motions, the trial court granted summary judgment for all appellees on limitations grounds.

## Standard of Review

■ The standard for reviewing a summary judgment is well-established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When a defendant moves for summary judgment based on an affirmative defense such as the statute of limitations, the defendant, as movant, bears the burden of proving each essential element of that defense. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

■ Once a defendant has established its statute of limitations defense as a matter of law, a nonmovant asserting fraudulent concealment must come forward with proof raising an issue of fact with respect to that claim to defeat summary judgment. *See American Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex.1994) (citing *Nichols v. Smith,* 507 S.W.2d 518, 521 (Tex.1974)). Furthermore, a plaintiff must plead and prove application of the discovery rule as an affirmative defense to circumvent the bar of limitations. *See Smith v. Knight,* 608 S.W.2d 165, 166 (Tex.1980); *DeLuna v. Rizkallah,* 754 S.W.2d 366, 368 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

## Statute of Limitations

■ The statute of limitations begins to run when a particular cause of action accrues. *See S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). Typically, a cause of action accrues when a wrongful act causes injury, regardless of when the plaintiff learns of the injury. *See Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). But, when a cause of action accrues in a particular case is a matter of law. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

The Medical Liability and Insurance Improvement Act ("article 4590i") governs all health care liability claims, which are defined as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure

from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp. 1998). Section 10.01 sets the statute of limitations at two years from the occurrence of the tort or the medical or health care treatment. *Id.* § 10.01 (Vernon Supp.1998). The statute further indicates that the two-year statute of limitations applies regardless of any other law and regardless of minority or any other legal disability, provided that minors under twelve years of age shall have until their fourteenth birthday to file a claim or have it filed on their behalf. *See id.* However, the Texas Supreme Court has nonetheless applied the statute of limitations found in sections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code for a minor's health care liability claims, holding that "[t]aken together, these sections require a minor to file a claim before reaching age twenty for personal injuries sustained during the period of minority." *Weiner v. Wasson,* 900 S.W.2d 316, 321 (Tex.1995); *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.001, 16.003 (Vernon 1986 & Supp.1998).

■ Common law fraud claims have a four-year statute of limitations. *See Williams v. Khalaf,* 802 S.W.2d 651, 654 (Tex.1990). The limitations period generally does not begin to run until the fraud is discovered or until it might have been discovered by reasonable diligence. *See Little v. Smith,* 943 S.W.2d 414, 420 (Tex.1997).

■ The discovery rule applies if 1) the injury is inherently undiscoverable and 2) the evidence of the injury is objectively verifiable. *See Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex.1997); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996). The discovery rule only applies in limited circumstances, where at the time the injury arose, the plaintiff did not and *could not* know of the injury. *See, e.g., Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex. 1988) (discovery of legal malpractice); *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984) (action for permanent land dam-

age accrues on discovery of first actionable injury); *Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972) (discovery that patient is fertile after vasectomy); *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967) (discovery of sponge in patient's body).

## Accrual of Savage's Claims

■ In her petition, Savage alleges five causes of action against all appellees: negligence, false imprisonment, intentional infliction of emotional distress, fraud, and violations of the DTPA. In her brief, Savage maintains that she is alleging "two distinct types of causes of actions," negligence/malpractice claims and fraud claims. In making this distinction, Savage seemingly acknowledges that her claims for false imprisonment, intentional infliction of emotional distress, and violations of the DTPA are nothing more than claims for breach of the accepted standard of care, which would be governed by the two-year limitations period set out in article 4590i.

### Health Care Liability Claims

■ In her petition, Savage complained that she was denied phone privileges, was made to sleep in the hall on one occasion, and was forced to endure five hours of "time out" on one occasion, despite the fact that she had no mental illness requiring in-patient care. Savage was aware of each of these conditions at the time they occurred, or at least by her release from the hospital. Thus, the discovery rule does not toll limitations on her health care liability claims.

■ Under article 4590i, limitations begin to run from 1) the date of the breach or tort; 2) the date the treatment that is the subject of the claim is completed; or 3) the date the hospitalization for which the claim is made is completed. *See Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993); *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex. 1987). In *Kimball,* the Supreme Court held that when a patient's injury occurs during a course of treatment for a particular condition, and the only readily ascertainable date is the last day of treatment, such as in the case of misdiagnosis or mistreatment, limita-

tions begin to run when the health care treatment that is the subject of the claim is completed. *See Kimball,* 741 S.W.2d at 372. Because she complains of the entire course of treatment she received while at Bedford Meadows and because there is no other readily ascertainable date of a breach or tort, Savage's claims against appellees began to run when she was discharged. *See Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995); *Kimball,* 741 S.W.2d at 372.

Savage was discharged on May 30, 1990. The statute of limitations was tolled until Savage turned eighteen on September 30, 1992. *See Weiner,* 900 S.W.2d at 321. Therefore, limitations ran on Savage's health care liability claims against appellees in September of 1994.

*Fraud Claims*

■ In her first point, Savage argues that summary judgment was improper because a fact issue exists regarding whether her fraud claims were brought within the four-year limitations period. Savage contends that she has asserted a claim for common law fraud that is not governed by article 4590i and that she brought this claim timely. Appellees contend that all of Savage's claims, despite their labels in her pleadings, are really health care liability claims governed by 4590i because they all arise out of the medical treatment she received while a patient at Bedford Meadows.

This court recently recognized that a plaintiff may make a claim for common law fraud that is not governed by article 4590i. *See Shannon v. Law–Yone,* 950 S.W.2d 429, 436 (Tex.App.—Fort Worth 1997, pet. denied). However, *Shannon* is distinguishable from the present case in that the plaintiff did not bring his claims under the DTPA, did not allege that his health care providers were negligent or that they breached an accepted standard of care, and did not allege medical malpractice. *See id.* at 437. In the present case, Savage has alleged negligence and breach of an accepted standard of care as well as deceptive trade practices. In correspondence with appellees, Savage directly states that "[she] has a 'health care liability claim' against [them] as the quoted term is defined in [a]rticle 4590i." Her original peti-

tion conceded that all her claims were governed by the "4590i limitations." She, thus, resorted to a fraudulent concealment argument stating that, "[d]ue to the deceptive nature of Defendants' conduct, Plaintiff was unable to discover the wrongs perpetrated on her by Defendants within two years of the time the acts and omissions occurred. Plaintiff has, however, brought this cause of action within a reasonable time of discovering the wrongful conduct."

■ Texas courts have held in numerous instances that a plaintiff cannot recast a health care liability claim in the language of another cause of action (e.g. breach of fiduciary duty or violation of the DTPA) to avoid the strict two-year statute of limitations found in article 4590i. *See Gormley v. Stover,* 907 S.W.2d 448, 450 (Tex.1995); *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995); *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994); *Waters ex rel. Walton v. Del–Ky, Inc.,* 844 S.W.2d 250, 259 (Tex.App.—Dallas 1992, no writ). In determining whether a plaintiff has tried to do so, we must review the underlying nature of the cause of action. *See Sorokolit,* 889 S.W.2d at 242. If the cause of action is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than a health care liability claim, no matter how the plaintiff labels it. *See Gormley,* 907 S.W.2d at 450; *Sorokolit,* 889 S.W.2d at 242.

In *Sorokolit,* a patient asserted a DTPA cause of action against her physician, alleging that the physician had represented that the result of her breast augmentation surgery would look like a photo she had selected when it did not. The Texas Supreme Court held that the patient's allegation did not necessarily involve the assertion that the physician had failed to meet the accepted standard of care, and therefore, the patient was entitled to proceed under a DTPA claim. The Court stated, "[h]er claim is that Dr. Sorokolit guaranteed the results of his surgery and that the doctor knowingly ... misrepresented his skills and the results he could achieve." *Sorokolit,* 889 S.W.2d at 242. The court concluded that although article 4590i "does preclude DTPA suits founded on a breach of the accepted standard of medical

care," it "does not preclude suits under the DTPA for knowing misrepresentation or breach of express warranty in cases in which a physician or health care provider warrants a particular result." *Id.* at 243.

In *Walden,* the plaintiff alleged that his dentist knowingly misrepresented that he would provide him properly-fitting dentures, and sought damages for violations of the DTPA, breach of implied warranty, and breach of contract. In upholding the trial court's summary judgment, the Texas Supreme Court expressed that, although the plaintiff sought to plead around article 4590i, his complaints were nothing more than health care liability claims. *See Walden,* 907 S.W.2d at 448. In distinguishing the facts in *Walden* from those in *Sorokolit,* the court concluded that the plaintiff's claims were merely medical negligence claims recast as DTPA claims. *See id.* A plaintiff's allegation that misrepresentations were "knowingly" made is thus not determinative when analyzing the underlying nature of a claim.

Similarly, in *Gormley,* a patient asserted a DTPA claim against a dentist because he allegedly misrepresented that a skin graft would work as well as a bone graft and because he was negligent in performing the surgery and in treating her after the surgery. *See Gormley,* 907 S.W.2d at 449. The Supreme Court held that all of the patient's claims had to do with whether the dentist's selection of the surgical procedure and the surgery met the standard of care for dentists in such circumstances. *See id.* at 450. The court concluded that the representations alleged by the patient were "nothing more than an attempt to recast [her] malpractice claim as a DTPA action, which section 12.01(a) of [4590i], as construed in *Sorokolit,* prohibits." *Id.*

An analogous case in the legal malpractice context is *Burnap v. Linnartz,* 914 S.W.2d 142 (Tex.App.—San Antonio 1995, writ denied). In *Burnap,* a member of a dissolved partnership brought an action against his former attorneys for professional negligence and legal malpractice, fraud and deceit, breach of fiduciary duties, constructive fraud, breach of contract, DTPA violations, intentional infliction of emotional distress, and

breach of the covenant of good faith and fair dealing. The trial court granted summary judgment for the defendants holding that the two-year statute of limitations found in section 16.003 of the Texas Civil Practice and Remedies Code barred all of the plaintiff's claims. The plaintiff argued on appeal that a four-year statute of limitations applied to his claims for breach of contract, fraud, and breach of fiduciary duty. The San Antonio Court of Appeals rejected this contention, holding that:

> Separating a claim for legal malpractice into claims for negligence, breach of contract, fraud, or other names does not change the underlying fact that the claims are based on professional negligence and are governed by the two year limitations statute. *See Sledge v. Alsup,* 759 S.W.2d 1, 3 (Tex.App.—El Paso 1988, no writ). As previously stated by this Court, "[w]hatever label is placed on it, a suit for legal malpractice is in the nature of a tort action and thus the two year statute of limitations governs." *Willis v. Maverick,* 723 S.W.2d 259, 261 (Tex.App.—San Antonio 1986), *aff'd,* 760 S.W.2d 642 (Tex.1988).

*Id.* at 148.

In order to establish a claim for common-law fraud or misrepresentation, a plaintiff must show that 1) a material misrepresentation was made; 2) the misrepresentation was false; 3) it was false at the time it was made; 4) the speaker knew it was false or made the misrepresentation recklessly without any knowledge of its truth or falsity; 5) the misrepresentation was made with the intention that it be acted upon by the recipient; 6) the recipient did act in reliance; and 7) the recipient was injured as a result of that reliance (i.e., damages). *See Shannon,* 950 S.W.2d at 433. However, after reviewing Savage's petition, it is clear that all of her claims are really nothing more than claims for breach of the accepted standard of care. Savage states in her brief, "Plaintiff's fraud claims assert that Defendant[s] *knew* that their 'treatment' of Plaintiff was not medically necessary or justified and *knew* the 'treatment' provided was not in her best interests, yet nonetheless misrepresented to Plaintiff and others that the treatment was medically

necessary or justified and in Plaintiff's best interests." The only factual allegations underlying Savage's fraud claims are the same as those underlying her negligence and medical malpractice claims, e.g., that she was kept hospitalized against her will although she did not require in-patient care. Without her medical malpractice claims, Savage has no claim for fraud. Moreover, Savage seeks to recover the same elements of damages under all theories of liability—medical expenses and damages for loss of freedom, humiliation, fear, emotional distress, and mental anguish.

Because all of Savage's claims against appellees arise from care received at Bedford Meadows while a patient there, her claims are classified, both statutorily and in accordance with case law, as health care liability claims for which an absolute two-year statute of limitations applies. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, §§ 1.03(a)(4), 10.01 (Vernon Supp.1998); *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985); *Walton*, 844 S.W.2d at 255. The limitations period began to run on September 30, 1992 when Savage turned eighteen. Limitations ran on all of Savage's claims on September 30, 1994. We, therefore, overrule Savage's first point.

### Fraudulent Concealment

■ Savage asserts that appellees are estopped from relying on the statute of limitations as an affirmative defense because they fraudulently concealed the existence of her causes of action. Fraudulent concealment is an equitable doctrine that estops a defendant who concealed his wrongful conduct from asserting the statute of limitations. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The court in *Borderlon* stated:

> [w]here a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence.

*Id.*

■ The doctrine of fraudulent concealment is therefore limited to those situations in which the defendant has a duty of disclosure. *See Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex.App.—Austin 1995, no writ). Because of this requirement, the cases where fraudulent concealment applies are rare, such as those involving doctor-patient or fiduciary relationships. *See id.* The issue of whether a duty to disclose exists is a question of law for the court. *See id.*

■ Under Texas law, in order to rely on this doctrine in avoidance of summary judgment, the burden lies with the plaintiff to raise a fact issue regarding fraudulent concealment. *See Allen*, 887 S.W.2d at 830; *Thames v. Dennison*, 821 S.W.2d 380, 384 (Tex.App.—Austin 1991, writ denied). A mere pleading or response to the summary judgment motion does not satisfy this requirement. *See id.* To show that she is entitled to the estoppel effect of fraudulent concealment, a plaintiff must show that 1) the defendant had actual knowledge of the wrong, 2) a duty to disclose the wrong, and 3) a fixed purpose to conceal the wrong. *See Walton*, 844 S.W.2d at 256. To meet her burden of producing sufficient evidence to raise a fact question for each element of this tolling counter-defense, the plaintiff must offer positive, unqualified, competent evidence made on personal knowledge. *See Ryland Group Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

■ The only evidence Savage offered in attempting to meet her burden consisted of the plea documents filed in cause number 94–0268 in the United States District Court for the District of Columbia, in which NME Psychiatric Hospitals, Inc., the predecessor corporation of Psychiatric Institutes of America, appellee in the present case, pleaded guilty to seven counts of conspiracy to defraud and illegal remuneration. However, these documents are not supported by any affidavit which proves them up as a public record or report or any other exception to the rules of hearsay as set out in Texas Rule of Civil Evidence 803, nor are they self-authenticated under Rule 902. *See* TEX.R. CIV. EVID. 803, 902. They are supported only by the affidavit of Savage's attorney, who was not involved in the investigation or prosecution of

those claims, in which he states that each "is a true and correct copy of what it purports to be." He does not provide this court with any testimony or evidence which supports his claim or establishes that he is competent to authenticate the documents. There is no evidence that Savage has personal knowledge as to the identity or authenticity of the plea documents or the allegations therein.

■ Texas courts have held that although the physician-patient relationship gives rise to a fiduciary relationship, and thus the duty to make certain disclosures, the doctor's duty ends when the physician-patient relationship ends. *See Thames,* 821 S.W.2d at 384; *Evans v. Conlee,* 741 S.W.2d 504, 506 (Tex. App.—Corpus Christi 1987, no writ). None of the appellees had any relationship with Savage beyond May 30, 1990, the date she was discharged from Bedford Meadows. Therefore, there was no duty to disclose beyond that date.

Moreover, Savage's own summary judgment evidence establishes that she was acutely aware of the alleged wrongful acts and resulting injuries underlying her claims even before she was discharged. Her petition reflects that she was aware of the alleged wrongful acts underlying her claims while hospitalized (denial of phone privileges, restrictions on visitors, confinement, "time-out," denials of numerous requests to leave the hospital, and pressure to stay in the hospital). Her petition further reflects that Savage was aware of her injuries while at Bedford Meadows. It states that she "felt extremely frightened, humiliated, helpless, and angered and suffered severe mental anguish and emotional distress." Accordingly, Savage cannot rely on the fraudulent concealment doctrine to delay the accrual of her causes of action beyond the date of her discharge.

Savage had the burden of coming forward with proof raising an issue of fact regarding fraudulent concealment. *See Ryland Group,* 924 S.W.2d at 121; *Thames,* 821 S.W.2d at 384. Because she failed to do so, her allegations of fraudulent concealment do not defeat appellees' right to summary judgment. Savage's second point is overruled.

**Conclusion**

Having overruled both of Savage's points, we conclude the trial court correctly found that Savage's claims were barred by the two-year statute of limitations of article 4590i. Accordingly, we affirm the summary judgment.