

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00089-CV

**JEAN HERZOG,**

**Appellant**

 **v.**

**WACO PRIMARY CARE, P.A.,**

**Appellee**

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2017-3626-4**

## MEMORANDUM  OPINION

Chapter 27 of the Civil Practice and Remedies Code, also known as the Texas Citizens Participation Act (TCPA), is an anti-SLAPP statute, meaning that it was enacted to curb "Strategic Lawsuits Against Public Participation." *In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.

> "The [TCPA] protects citizens who [associate,] petition or speak on matters
> of public concern from retaliatory lawsuits that seek to intimidate or silence
> them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015).  That protection comes

in the form of a special motion to dismiss, subject to expedited review, for "any suit that appears to stifle the defendant's" exercise of those rights. *Id.*

*Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

In this accelerated appeal, Jean Herzog (Herzog) challenges the trial court's interlocutory order denying her motion to dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12). We will affirm.

## Factual and Procedural Background

Waco Primary Care, P.A. (WPC) sued Herzog, alleging as follows in its petition: Dr. Karl M. Trippe (Trippe) established WPC in 2011 to provide family medical services to the McLennan County community. Herzog joined WPC as a nurse practitioner in August 2015, and during her employment with WPC, Herzog had access to and used WPC's patient lists through the Athena Clinical Electronic Medical Records software. In October 2016, Herzog tendered her resignation letter to Trippe. Herzog indicated that she would be leaving the employ of WPC in four weeks' time, and she departed WPC in November 2016. Trippe subsequently discovered that Herzog had misappropriated WPC's trade secrets, confidential information, and patient lists during her employment with WPC, and Herzog had used the patient lists to "contact and procure" WPC's patients for her new place of employment. WPC brought causes of action against Herzog for misappropriation of trade secrets, tortious interference with continuing and prospective business relations, and conversion.

Herzog answered WPC's petition by generally denying all of WPC's allegations. Herzog also filed a counterclaim against WPC for misappropriation of her name.

Furthermore, Herzog filed a motion to dismiss WPC's claims under the version of the TCPA in effect at that time.[1] Herzog provided the following basis for her TCPA motion to dismiss:

> [P]ursuant to [Civil Practice and Remedies Code section] 27.003, this legal action is "based on, relates to, or is in response to a party's exercise of the right of free speech . . . or right of association. . . ." As such, this case should be dismissed. Both Nurse Practitioner Jean Herzog and the patients have these rights. In fact, the fiduciary relationship owed the patient(s) would seem to call for disclosure of the very information related to them by Nurse Practitioner Jean Herzog.

In support of her TCPA motion to dismiss, Herzog attached her own affidavit, in which she stated as follows: Herzog has been in practice as a nurse practitioner in McLennan County for over twenty years. She began her practice at the Family Practice Clinic, where she worked for several years. She then moved her practice to work with two specific doctors. She then moved her practice once more to work with Dr. Pat Pryor (Pryor) at the White Rock Clinic, where she remained for about fourteen years. Many of Herzog's patients followed her from the Family Practice Clinic to the White Rock Clinic, and most of Herzog's patients at the White Rock Clinic saw only her and not Pryor. Herzog therefore essentially had her own patients and was not typically allocated Pryor's patients.

Herzog stated in her affidavit that in 2011 Trippe began an office-sharing arrangement with Pryor. From 2011 to 2015, Herzog generally continued to see only her

---

[1] The TCPA was substantially amended in 2019, but the 2019 amendments apply only to actions filed on or after September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12. The underlying case was filed in October 2017; thus, the 2019 amendments to the TCPA do not apply to this case, and our discussion of the TCPA in this opinion is of the version of the TCPA in effect before September 1, 2019. *See id.*

own patients and did not see Trippe's or other WPC providers' patients, except in call-coverage or emergency situations. Pryor then retired in 2015. At that time, WPC and/or Trippe purchased the White Rock Clinic building. Herzog does not believe that WPC or Trippe purchased Pryor's medical practice, records, or patient files. Nor does Herzog believe that WPC or Trippe purchased her records or patient files. Nevertheless, in August 2015, rather than change office locations, Herzog became employed by WPC and continued to see her own patients in the same location where she had seen them while she was with the White Rock Clinic. While employed by WPC, Herzog was not referred Trippe's or any other WPC providers' patients, except in very unusual situations. Similarly, Trippe did not see Herzog's patients, except on an infrequent basis.

Herzog stated in her affidavit that on November 2, 2016, she provided Trippe notice that she would be leaving the employ of WPC in thirty days' time. After providing her notice of resignation, Herzog then began telling her patients who came into the office to see her that she was leaving WPC, that she would be joining Providence Family Practice and working with a specific doctor, and that her patients could continue patient care through her at the new location if they wished. Additionally, for those of her patients whom she did not see during the thirty-day period before she left the employ of WPC, Herzog used their patient records to retrieve their home addresses so that she could send a letter to them that she was leaving WPC, that she would be working for the Providence Family Practice Clinic with a specific doctor, and that her patients could make appointments with her there if they chose to do so. Herzog did not tell any patients other than her own patients about her leaving WPC and joining the new practice. Furthermore,

Herzog took no patient lists or files from the offices of Trippe or WPC. Herzog's employment with WPC ended on November 29, 2016.

WPC thereafter filed a response to Herzog's TCPA motion to dismiss. In its response, WPC first made objections to Herzog's affidavit. WPC then argued, in part, that the commercial-speech exemption applies to this case. WPC then requested that it be awarded attorney's fees under section 27.009(b) of the Civil Practice and Remedies Code because Herzog's TCPA motion to dismiss was "patently frivolous and merely utilized as a tool to delay the proceedings." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(b). Finally, WPC attached Trippe's affidavit to its response.

Herzog filed a reply and then a supplemental reply to WPC's response. In part to address WPC's objections to her affidavit that she had attached to her TCPA motion to dismiss, Herzog attached her own supplemental affidavit to her reply and her own amended affidavit to her supplemental reply. Herzog further attached her attorney's affidavit to her supplemental reply to support her TCPA motion to dismiss. Finally, Herzog filed objections to Trippe's affidavit.

The trial court held a nonevidentiary hearing on Herzog's TCPA motion to dismiss. During the hearing, WPC withdrew its request for attorney's fees under section 27.009(b). After the hearing, the trial court then signed an order denying Herzog's objections to Trippe's affidavit and an order denying Herzog's TCPA motion to dismiss.

Herzog thereafter filed a "Request for Findings of Fact and Conclusions of Law," in which she specifically asked the trial court "to file findings of fact and conclusions of law regarding whether the legal action was brought to deter or prevent the moving party

from exercising constitutional rights and whether the legal action was brought for an improper purpose under § 27.001 of the Texas Civil Practice and Remedies Code." *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.007(a) ("At the request of a party making a motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.") (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.007(a)). The trial court accordingly made the following "Findings Under Texas Civil Practice and Remedies Code Section 27.007":

1.  This legal action was not brought by Plaintiff [WPC] to deter or prevent the moving party [Herzog] from exercising constitutional rights. The Court further finds that the legal action was not brought for an improper purpose, nor to harass or delay or increase the cost of litigation.

2.  The Court finds that Plaintiff [WPC], in open court, withdrew its request for attorneys' fees under Chapter 27.009, and that the motion was not brought for [an] improper purpose.

Herzog subsequently filed a "Request for Additional Findings of Fact & Conclusions of Law," citing Rules of Civil Procedure 297 and 298. Herzog requested that the trial court make specific findings and conclusions about whether WPC established by clear and specific evidence a prima facie case for each essential element of each of its claims, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c), and about the applicability of the commercial-speech exemption to this case, *see* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 3, sec. 27.010(b) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE

ANN. § 27.010(a)(2)). The record contains no additional findings or conclusions from the trial court.

## Issue One

In her first issue, Herzog contends that the trial court erred in denying her TCPA motion to dismiss.

AUTHORITY

We review the trial court's ruling on a TCPA motion to dismiss *de novo*. *Martin v. Walker*, 606 S.W.3d 565, 567 (Tex. App.—Waco 2020, pet. denied); *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied).

Under the TCPA, as a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. *Youngkin*, 546 S.W.3d at 679; *see* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.005(b) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)). In other words, the moving party must show by a preponderance of the evidence that the legal action against it "is based on, relates to, or is in response to [the moving] party's exercise of the right of free speech, right to petition, or right of association." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.003(a) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)); *see Youngkin*, 546 S.W.3d at 680. If the moving party meets that burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claims. *Youngkin*, 546 S.W.3d at 679; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving

party to prove each essential element of any valid defenses by a preponderance of the evidence. *Youngkin*, 546 S.W.3d at 679–80; *see* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 2 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)).

Despite the foregoing procedure, the TCPA expressly exempts certain actions from its application. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.010, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 3 (amended 2019 & 2021) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.010). "[An] exemption, of course, is wholly unnecessary unless the TCPA applies." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). But, even if the moving party shows by a preponderance of the evidence that the legal action against it is based on, relates to, or is in response to the moving party's exercise of the right of free speech, right to petition, or right of association, the TCPA does not apply to the legal action—and thus the moving party may not use the TCPA to dismiss the action—if the action falls under a TCPA exemption. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.010, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 3 (amended 2019 & 2021); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that movant cannot invoke TCPA's protections if TCPA exemption applies). The nonmoving party bears the burden of showing that an exemption applies. *Martin*, 606 S.W.3d at 569.

As relevant here, the TCPA

does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance

product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 3, sec. 27.010(b) (amended 2019). This exemption is commonly referred to as the "commercial-speech exemption." *Martin*, 606 S.W.3d at 567–68; *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). The Texas Supreme Court has interpreted the commercial-speech exemption to apply when (1) the defendant (here, Herzog) was primarily engaged in the business of selling or leasing goods or services, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct was actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman*, 546 S.W.3d at 688. Because a legal action falls within the commercial-speech exemption only when all four elements are satisfied, the failure of the nonmoving party to establish any one element is sufficient to prevent the exemption from applying. *RigUp, Inc. v. Sierra Hamilton*, LLC, 613 S.W.3d 177, 187 (Tex. App.—Austin 2020, no pet.); *see Castleman*, 546 S.W.3d at 690–91.

DISCUSSION

We begin with Herzog's argument that WPC could not have satisfied its burden of showing that the commercial-speech exemption applies in this case because WPC was required to provide "*actual evidence* to support the application of the exemption," and the

*only* evidence that WPC attached to its response to Herzog's TCPA motion to dismiss was Trippe's "conclusory, self-serving affidavit . . . which failed to offer any proof that the commercial[-]speech exemption applied." While we agree that WPC, the nonmoving party here, had the burden of showing that the commercial-speech exemption applies in this case, we disagree that the trial court was restricted to considering *only* Tripp's affidavit in determining whether WPC met its burden.

The TCPA provides: "In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, sec. 27.006(a) (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). Accordingly, in determining whether WPC met its burden of showing that the commercial-speech exemption applies in this case, the trial court should have also considered the factual allegations contained in WPC's petition and Herzog's description of the events in her own affidavit. *See id.*; *cf. VetMoves v. Lone Star Veterinarian Mobile Surgical Specialists, PC*, No. 02-19-00340-CV, 2020 WL 1887770, at *3 (Tex. App.—Fort Worth Apr. 16, 2020, no pet.) (mem. op.) ("[T]he petition alone satisfies the [commercial-speech] exemption's application."); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 480 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc) ("[T]he factual allegations contained in the pleadings may alone be sufficient to demonstrate that the nature of the claims is such that the claims are statutorily exempt without need of additional proof."); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 889 (Tex. App.—Austin 2018, pet. denied) ("In determining whether some of the Pivot Plaintiffs' claims fall within

the commercial-speech exemption, we examine the 'evidence,' which in this case consists of the plaintiffs' pleadings.").

With the foregoing in mind, we turn to Herzog's argument that the commercial-speech exemption does not apply in this case because WPC did not meet its burden of establishing the third *Castleman* element, *i.e.*, that Herzog's communications arose out of a commercial transaction involving the kind of services Herzog provides. To support her position, Herzog relies heavily on *Global Tel\*Link Corp. v. Securus Techs., Inc.*, No. 05-16-01224-CV, 2017 WL 3275921 (Tex. App.—Dallas July 31, 2017, pet. dism'd) (mem. op.).

In *Global Tel\*Link*, Securus Technologies, Inc. (Securus) and Global Tel\*Link Corporation (GTL) each provided "telephone and video communications system services at correctional facilities for the use of inmates and law enforcement agencies." *Id.* at \*1. Securus and GTL each owned patents to protect the intellectual property related to such services, and Securus and GTL became involved in federal litigation against each other related to their respective patents. *Id.* Among GTL's claims in that litigation was its contention that Securus was infringing on two of its patents. *Id.* Securus denied GTL's allegations and challenged the validity of the two patents. *Id.* In connection with those challenges, Securus also filed petitions for inter partes review in the U.S. Patent and Trademark Office (PTO), requesting that the PTO "reexamine the GTL patents and cancel various of the patents' claims." *Id.* The PTO initially agreed to review Securus's challenge to one of GTL's patents but subsequently rejected the challenge. *Id.*

> After the PTO's ruling, GTL sent, via email, an "Important Industry News Alert" to members of law enforcement, correctional facility officers, and their representatives announcing the PTO's ruling. GTL said the ruling

cleared the way for it to pursue its patent infringement claims against Securus and seek injunctive relief and damages. GTL further said, if granted, an injunction "could have ramifications for customers using the infringing technology."

*Id.* Thereafter, GTL "secured another favorable ruling from the PTO" regarding the other disputed patent. *Id.* at *2.

> GTL then sent another email, again titled "Important Industry News Alert." That email similarly stated the PTO's ruling cleared the way for GTL to pursue its patent infringement claims and seek an injunction. GTL noted that "if granted" an injunction would prohibit Securus from using GTL's "patented technologies . . . at all facilities where infringement is occurring." GTL added that "they were only months away from finally being able to show a jury how Securus infringes on the GTL patents."

*Id.*

Securus subsequently sued GTL for defamation, business disparagement, and tortious interference with existing contracts. *Id.* GTL filed a motion to dismiss Securus's claims under the TCPA. *Id.* Securus responded, in part, that the commercial-speech exemption applied to GTL's communications. *Id.* The trial court ultimately denied GTL's TCPA motion to dismiss. *Id.* GTL then appealed. The Dallas Court of Appeals concluded that even though Securus showed that (1) GTL's communications were "about" its services and (2) GTL had a commercial motive, Securus did not show that GTL's communications "arose out of any sale of either GTL's or Securus's goods or services, any contemplated or proposed sale, or any other actual or contemplated commercial transaction." *Id.* at *4. The court therefore held that Securus failed to show that the commercial-speech exemption applied to GTL's communications. *Id.*

Herzog argues here that, similarly to GTL's communications, her communications may have been "about" her services, but they did not arise out of a sale of her services. Herzog asserts that her communications "merely regarded her move to a new location in order to keep her patients informed." Herzog further argues that her communications could not have arisen out of any sale of her services because the communications were sent only to patients who had *not* sought care from her in the month before she moved. We believe, however, that the pleadings and record evidence show that Herzog's communications were not just "about" her services but that they arose out of the sale of her services.

We initially note that the Dallas Court of Appeals decided *Global Tel\*Link* before the Texas Supreme Court decided *Castleman*.[2] Consequently, although the *Global Tel\*Link* court considered similar elements to those outlined in *Castleman* in determining whether the commercial-speech exemption applied in that case, the *Global Tel\*Link* court did not have the benefit of the *Castleman* opinion in resolving *Global Tel\*Link*. Furthermore, as an intermediate appellate court, we must follow the precedent of the Texas Supreme Court on state-law issues. *See, e.g.*, *Hegar v. Xerox Corp.*, 633 S.W.3d 298, 315 (Tex. App.—Houston [14th Dist.] 2021, pet. filed); *Hardy v. Robinson*, 170 S.W.3d 777, 781 (Tex. App.—Waco 2005, no pet.).

The *Castleman* court recognized that the commercial-speech exemption applies only to certain communications related to services in the marketplace—communications

---

[2] Herzog also filed her original appellant's brief before *Castleman* was decided, but she filed her reply brief after *Castleman* was decided and discusses *Castleman* therein.

made not as a protected exercise of free speech by an individual, but as commercial speech that does "no more than *propose* a commercial transaction." *Castleman*, 546 S.W.3d at 690 (emphasis added) (quoting *Posadas de P.R. Assocs. v. Tourism Co. of P.R.*, 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986)). The *Castleman* court "further implied that the [commercial-speech] exemption applies when communications involve business pursuits for oneself or a business stands to profit from the statements at issue." *Clean Energy v. Trillium Transp. Fuels, LLC*, No. 05-18-01228-CV, 2019 WL 3212145, at *5 (Tex. App.—Dallas July 9, 2019, no pet.) (mem. op.) (citing *Castleman*, 546 S.W.3d at 691).

Here, WPC alleged in its petition that Herzog used WPC's patient lists to "contact and procure" WPC's patients for her new place of employment. Herzog then stated in her own affidavit that she communicated with patients that she was leaving WPC, that she would be working for the Providence Family Practice Clinic with a specific doctor, and that her patients could make appointments with her there if they chose to do so. The pleadings and record evidence therefore show that, at a minimum, Herzog's communications encouraged patients to seek medical services from her at her new practice rather than from WPC. We thus conclude that Herzog's communications arose out of a commercial transaction, satisfying the third *Castleman* element. *See Castleman*, 546 S.W.3d at 690–91.

Finally, we turn to Herzog's argument that the commercial-speech exemption does not apply in this case because the relationship between Herzog and those with whom she communicated was not "the standard arm's length vendor/buyer commercial relationship" but a fiduciary relationship between a healthcare provider and her patients.

This argument essentially challenges whether WPC met its burden of establishing the second *Castleman* element, *i.e.*, that Herzog made the communications on which WPC's claims are based in Herzog's capacity as a seller of her services.

Herzog stated in her affidavit, and reiterated in her briefing, that she sent unsolicited, targeted communications to patients who had *not* sought care from her in the month before she moved. Herzog further stated in her affidavit that the substance of her communications was only that she was leaving WPC, that she would be working for the Providence Family Practice Clinic with a specific doctor, and that her patients could make appointments with her there if they chose to do so. The pleadings and record evidence therefore show that the intended goal of Herzog's communications was to encourage patients to seek medical services from her at her new practice rather than from WPC. Accordingly, although a fiduciary relationship exists between a healthcare provider and patient in some circumstances, *see, e.g.*, *Savage v. Psychiatric Inst. of Bedford, Inc.*, 965 S.W.2d 745, 754 (Tex. App.—Fort Worth 1998, pet. denied) ("[T]he physician–patient relationship gives rise to a fiduciary relationship."), the pleadings and record evidence here show that Herzog made the communications on which WPC's lawsuit is based in Herzog's capacity as a seller of her medical services, satisfying the second *Castleman* element.

In light of the foregoing, [3] we conclude that WPC met its burden of showing that the commercial-speech exemption applies. The TCPA therefore does not apply to WPC's

---

[3] Herzog does not challenge that WPC established that she was primarily engaged in the business of selling medical services, *i.e.*, the first *Castleman* element, or that the intended audience of her communications was her actual or potential customers for the kind of services she provides, *i.e.*, the fourth *Castleman* element.

lawsuit against Herzog. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 3, sec. 27.010(b) (amended 2019). Accordingly, the trial court did not err in denying Herzog's TCPA motion to dismiss. Herzog's first issue is overruled.

## Issue Two

In her second issue, Herzog contends that the trial court erred in denying her objections to Trippe's affidavit. However, having overruled Herzog's first issue without reliance on Trippe's affidavit, we need not reach Herzog's second issue.

## Issue Three

In her third issue, Herzog contends that the trial court erred in finding that the underlying lawsuit was not brought to deter or prevent her from exercising constitutional rights and was not brought for an improper purpose. For the reasons stated in Herzog's first issue, we overrule Herzog's third issue.

## Conclusion

We affirm the trial court's order denying Herzog's TCPA motion to dismiss.

MATT JOHNSON
Justice

Before Justice Johnson,
    Justice Smith, and
    Justice Wright[4]
Affirmed

---

[4] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.

Opinion delivered and filed February 2, 2022
[CV06]

